No. 25-11990-AA

# IN THE UNITED STATES COURT OF APPEALS FOR THE ELEVENTH CIRCUIT

WEBB ANDERSON, ET AL.,
*Plaintiffs-Appellees,*

*v.*

THE UNITED STATES OF AMERICA,
*Defendant-Appellant.*

On Appeal from the United States District Court
for the Northern District of Georgia
No. 1:21-CV-03226-AT

# BRIEF OF APPELLANT THE UNITED STATES OF AMERICA

THEODORE S. HERTZBERG
*United States Attorney*

ANDRES H. SANDOVAL
*Assistant United States Attorney*

600 United States Courthouse
75 Ted Turner Drive, S.W.
Atlanta, GA 30303
(404) 581-6000

*Webb Anderson, et al. v. The United States of America*
No. 25-11990-AA

## CERTIFICATE OF INTERESTED PERSONS AND CORPORATE DISCLOSURE STATEMENT

Counsel hereby certifies that the following people and entities may have an interest in the outcome of this appeal:

Anderson, Donna, Plaintiff-Appellee

Anderson, Kermit Webb, Plaintiff-Appellee

Baverman, Hon. Alan, United States Magistrate Judge

Bearden, Joshua, Attorney for Plaintiffs-Appellees

Berelc, Justin, Attorney for Plaintiffs-Appellees

Berelc Law Office, P.C., Attorneys for Plaintiffs-Appellees

Buchanan, Ryan K., former United States Attorney

Childres, Robert Harold III, former Attorney for Plaintiffs-Appellees

Cook, Kate, Attorney for Plaintiffs-Appellees

Cook Law Group, LLC, Attorneys for Plaintiffs-Appellees

Cook, Matthew, Attorney for Plaintiffs-Appellees

Erskine, Kurt R., former United States Attorney

Estate of Jesse James Anderson, Plaintiff-Appellee

Greer, Jonathan, Attorney for Plaintiffs-Appellees

Hertzberg, Theodore S., United States Attorney

Lim, Sharon A., former Assistant U.S. Attorney

Mendel, Gabriel A., Assistant U.S. Attorney

Moultrie Jr., Richard S., former Acting United States Attorney

Nicholson, Nathan, Attorney for Plaintiffs-Appellees

Sandoval, Andres H., Assistant United States Attorney

Totenberg, Hon. Amy, Senior United States District Judge

United States of America, Defendant-Appellant

Williams, Melaine A., former Assistant U.S. Attorney

No publicly traded company or corporation has an interest in the outcome of the case or appeal.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ Andres H. Sandoval*
ANDRES H. SANDOVAL
*Assistant United States Attorney*

## STATEMENT REGARDING ORAL ARGUMENT

Pursuant to Federal Rule of Appellate Procedure 34(a) and Eleventh Circuit Rules 28-1(c) and 34-3(c), Appellant the United States of America respectfully requests oral argument because the district court's order erred in construing and applying a narrow exception to a limited waiver of sovereign immunity. As a result, the court entered judgment for Appellees in an amount that was $3 million more than it had jurisdiction to enter. Appellant respectfully submits that oral argument will aid this Court's decisional process as a discussion of the nuanced legal precedent will address any issues not raised in the parties' briefs.

## TABLE OF CONTENTS

Certificate of Interested Persons and Corporate Disclosure Statement ............ C-1

Statement Regarding Oral Argument ............ i

Table of Contents ............ ii

Table of Citations ............ iv

Statement of Jurisdiction ............ vii

Statement of the Issue ............ 1

Statement of the Case ............ 2

- A. Legal Background ............ 2
- B. Statement of the Facts ............ 4
- C. Course of Proceedings and Disposition Below ............ 6
  1. The Administrative Claims ............ 6
  2. Discovery ............ 7
  3. Sanctions ............ 8
  4. Amendment of the *Ad Damnum* Clause ............ 9
  5. Trial ............ 10
- D. Standard of Review ............ 12

Summary of the Argument ............ 13

Argument and Citations of Authority ............ 16

Where neither exception under section 2675(b) applied, the district court erred in awarding more than $3 million for wrongful death. ............ 16

- A. Absent an applicable exception, a court lacks the jurisdiction to award more than the administrative claim amount. ............ 16

B. It was error for the court to permit an increase to the wrongful death claim because of "newly discovered evidence" where the parties agreed that exception did not apply. .......... 18

C. Nor could the court have permitted an increase to the wrongful death claim based on inflation or an increase in comparable verdicts and settlements because these are not "intervening facts." .......... 20

1. An intervening fact is one that changes the magnitude of the injury that the plaintiff has suffered. .......... 20

2. Inflation is not an "intervening fact" because it demonstrates nothing about the magnitude of an injury .......... 23

3. Similarly, an increase in comparable settlements and verdicts does not affect, much less change, any component of a wrongful death injury. .......... 28

Conclusion .......... 32

Certificate of compliance with type-volume limit, typeface requirements, and type-style requirements .......... 33

Certificate of Service .......... 34

# TABLE OF CITATIONS

## Federal Cases

*City of Miami Gardens v. Wells Fargo & Co.*,
931 F.3d 1274 (11th Cir. 2019) .......... 12, 17
**Cole v. United States*,
861 F.2d 1261 (11th Cir. 1988) .......... 22
*Curtis v. United States*,
274 F. Supp. 3d 1366 (N.D. Ga. 2017) .......... 2, 28, 29
*Dalrymple v. United States*,
460 F.3d 1318 (11th Cir. 2006) .......... 2
**Davis v. Marsh*,
807 F.2d 908 (11th Cir. 1987) .......... 3, 12, 16, 17
*Dotson v. United States*,
30 F.4th 1259 (11th Cir. 2022) .......... 12, 17, 31
**Fraysier v. United States*,
766 F.2d 478 (11th Cir. 1985) .......... 3, 22, 23, 29, 30
*Husovsky v. United States*,
590 F.2d 944 (D.C. Cir. 1978) .......... 21
*Kielwien v. United States*,
540 F.2d 676 (4th Cir. 1976) .......... 17, 30
*Lebron v. United States*,
279 F.3d 321 (5th Cir. 2002) .......... 3, 30
*Malmberg v. United States*,
816 F.3d 185 (2d Cir. 2016) .......... 17
**Martinez v. United States*,
780 F.2d 525 (5th Cir. 1986) .......... 16, 17, 25
*Mass. Dep't of Revenue v. Shek (In re Shek)*,
947 F.3d 770 (11th Cir. 2020) .......... 24
*McMichael v. United States*,
856 F.2d 1026 (8th Cir. 1988) .......... 25, 26, 27
*Means v. United States*,
176 F.3d 1376 (11th Cir. 1999) .......... 30, 31

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

*Michels v. United States*,
31 F.3d 686 (8th Cir. 1994) .................................. 12, 17, 22, 23, 28
**Molinar v. United States*,
515 F.2d 246 (5th Cir. 1975) ............................................21, 23, 28
**O'Rourke v. E. Air Lines, Inc.*,
730 F.2d 842 (2d Cir. 1984).................................................... 21, 24
*Salve Regina Coll. v. Russell*,
499 U.S. 225 (1991) ................................................................... 21
*Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*,
711 F.3d 675 (6th Cir. 2013) ........................................................ 24
**Spivey v. United States*,
912 F.2d 806 (4th Cir. 1990 ................................................... 21, 22
*Sullivan v. United States*,
No. B/1222, 1985 U.S. Dist. LEXIS 21201
(S.D. Ga. Mar. 29, 1985) ............................................................ 25
*Tookes v. United States*,
811 F. Supp. 2d 322 (D.D.C. 2011) ............................................. 25
*Turner v. United States*,
514 F.3d 1194 (11th Cir. 2008) ................................................ 3, 30
**United States v. Alexander*,
238 F.2d 314 (5th Cir. 1956) ....................................................... 20
*United States v. Kubrick*,
444 U.S. 111 (1979) ..................................................................... 2
**Zurba v. United States*,
318 F.3d 736 (7th Cir. 2003) .................................. 3, 16, 22, 23, 28

**State Cases**

*Bibbs v. Toyota Motor Corp.*,
815 S.E.2d 850 (Ga. 2018) ....................................................6, 19, 28
*Mays v. Kroger Co.*,
701 S.E.2d 909 (Ga. Ct. App. 2010)........................................ 6, 19

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

**Federal Statutes**

28 U.S.C. § 1291 .......... vii
28 U.S.C. § 1346(b) .......... 2
28 U.S.C. § 1346(b)(1) .......... vii, 2
28 U.S.C. § 2674 .......... 24, 30
*28 U.S.C. § 2675 .......... 9
28 U.S.C. § 2675(a) .......... 2, 16, 26
28 U.S.C. § 2675(b) .......... 1, 3, 10–13, 15, 16, 17, 22–25, 28, 29, 30

**State Statutes**

Ga. Code Ann. § 9-2-41 .......... 7
Ga. Code Ann. § 51-4-2(a) .......... 6, 28
Ga. Code Ann. § 51-4-5(b) .......... 28, 29

**Federal Rules**

11th Cir. R. 28-5 .......... 8
Fed. R. App. P. 4(a)(1)(B) .......... vii
Fed. R. App. P. 32(a)(5)(A) .......... 33
Fed. R. App. P. 32(a)(6) .......... 33
Fed. R. App. P. 32(a)(7)(B)(i) .......... 33
Fed. R. App. P. 32(f) .......... 33
Fed. R. Civ. P. 37(c)(1)(A) .......... 8

**Federal Regulations**

28 C.F.R. § 14.2(a) .......... 2

**Other Authorities**

U.S. Bureau of Labor Statistics,
*https://www.bls.gov/bls/inflation.htm* .......... 23
(last visited on September 19, 2025)

*https://www.bls.gov/data/inflation_calculator.htm* .......... 27
(last visited September 19, 2025).

*Citations primarily relied upon. 11th Cir. R. 28-1(e).

No. 25-11990-AA

IN THE UNITED STATES COURT OF APPEALS
FOR THE ELEVENTH CIRCUIT

WEBB ANDERSON, ET AL.,
*Plaintiffs-Appellees,*

*v.*

THE UNITED STATES OF AMERICA,
*Defendant-Appellant.*

## STATEMENT OF JURISDICTION

(A) The district court had subject matter jurisdiction over the underlying case based on 28 U.S.C. § 1346(b)(1).

(B) The court of appeals has jurisdiction over this direct appeal from the judgment of the district court under 28 U.S.C. § 1291.

(C) The notice of appeal was timely filed on June 9, 2025, within 60 days of the entry of the district court's amended judgment on April 18, 2025. Fed. R. App. P. 4(a)(1)(B).

(D) This appeal is from a final order and judgment that disposes of all the parties' claims in this civil case.

## STATEMENT OF THE ISSUE

The Federal Tort Claims Act limits a plaintiff's recovery to the amount of the pre-suit claim made to the appropriate federal agency, unless the plaintiff can show "newly discovered evidence" or "intervening facts" under 28 U.S.C. § 2675(b). The Court has applied these exceptions only when a plaintiff presents evidence or facts bearing on the extent of her injuries. Here, Plaintiff K. Webb Anderson presented a $3 million claim to the U.S. Department of Veterans Affairs for the wrongful death of his father. After filing suit, he sought to increase the claim to $6 million because of unforeseen inflation and an increase in comparable settlements and verdicts in Georgia. The district court granted the increase and then awarded the full $6 million after trial. Did the district court err as a matter of law in applying the § 2675(b) exceptions to the wrongful death claim?

## STATEMENT OF THE CASE

### A. Legal Background

The Federal Tort Claims Act, 28 U.S.C. §§ 1346(b), 2671–2680 ("FTCA"), is a limited waiver of the Government's sovereign immunity. *United States v. Kubrick*, 444 U.S. 111, 117 (1979). It provides an avenue to assert tort claims, in federal court, against the Government "for injury or loss of property, or personal injury or death" caused by the negligence or wrongful acts or omissions of its employees. 28 U.S.C. § 1346(b)(1). But the FTCA does not create federal torts; rather, it borrows from state law by making the Government liable as if it were a "private person . . . in accordance with the law of the place where the act or omission occurred." *Id.* Thus, the FTCA will borrow from substantive state law to define the causes of action. *See, e.g.*, *Curtis v. United States,* 274 F. Supp. 3d 1366, 1376 (N.D. Ga. 2017) (applying Georgia law to negligence and wrongful death claims).

Before filing suit, a plaintiff must first present an administrative claim, in writing, to the appropriate federal agency. 28 U.S.C. § 2675(a); *Dalrymple v. United States*, 460 F.3d 1318, 1325 (11th Cir. 2006). The claim must demand money damages in a sum certain. *See Dalrymple*, 460 F.3d at 1324; 28 C.F.R. § 14.2(a). This is the "sum certain requirement." *Id.*

The sum certain requirement is important for two reasons. First, it sets the upper limit of recoverable money damages in litigation, if the agency denies the claim. *See* 28 U.S.C. § 2675(b); *Davis v. Marsh*, 807 F.2d 908, 912 (11th Cir. 1987) ("It is also certain that appellees cannot recover any sum in excess of the amount of his administrative claim . . .") (internal quotation marks omitted). Second, by giving the Government certainty as to its maximum exposure, it "enabl[es] the government to evaluate whether to settle a claim or proceed to trial." *Turner v. United States*, 514 F.3d 1194, 1200 (11th Cir. 2008); *see also Lebron v. United States*, 279 F.3d 321, 330–31 (5th Cir. 2002) ("Requiring the plaintiff to guard against a worst-case scenario in preparing his claim gives the Government full notice of its maximum potential liability in the case. This encourages settlement of FTCA cases in accordance with the statute's purposes.").

The requirement has two limited exceptions. A plaintiff may seek damages above the stated sum certain in the administrative claim only when the increase is based on "newly discovered evidence" or "intervening facts." 28 U.S.C. § 2675(b). "The plaintiff has the burden of showing that her case fits within one of these exceptions." *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003); *accord Fraysier v. United States*, 766 F.2d 478 (11th Cir. 1985).

## B. Statement of the Facts

In November 2016, Jesse James Anderson was admitted to the Atlanta Veterans Affairs Medical Center ("VAMC") for an elective right carotid endarterectomy (a surgery to remove plaque build-up from his right carotid artery). (Doc. 263 at 3).[1] The surgery was successful, but Mr. Anderson suffered a temporary nerve palsy affecting his ability to swallow. *Id.* at 4. As a result, during his recovery, Mr. Anderson was receiving his medications and food through a feeding tube. *Id.*

About two weeks into his recovery, Mr. Anderson's feeding tube became dislodged. *Id.* His doctor ordered that it be re-inserted by a nurse. *Id.* But when the nurse performed the re-insertion, she mistakenly guided the tube into Mr. Anderson's trachea and through his vocal cords. *Id.* at 5.

Over the next 25 minutes, Mr. Anderson suffered respiratory distress, his vocal cords eventually closed, and he went into cardiac arrest. *Id.* at 5–6, 33–34. Though he was resuscitated, a prolonged lack of oxygen caused him to suffer an anoxic brain injury and rendered him comatose. *Id.* at 6. Two days later, his family elected to remove life support functions; he died shortly thereafter. *Id.*

---

[1] Docket citations are to the district court's docket, Case No. 1:21-cv-03226-AT, as incorporated into the record on appeal.

The VAMC took several steps to investigate the circumstances of Mr. Anderson's death. Within one week of the death, the VAMC collected witness statements from Mr. Anderson's providers, including from the nurse who performed the re-insertion, her supervisors, and two nurses involved in Mr. Anderson's emergency code call (collectively, "Provider Statements"). (Doc. 220 at 6–7). Two weeks after the death, a nurse manager in a separate VA hospital conducted a review of the actions of the nurse who incorrectly re-inserted the feeding tube ("Management Review"). (Doc. 263 at 6). And nearly one month after the death, the VAMC convened an Administrative Investigation Board ("AIB") to investigate the adverse events which led to Mr. Anderson's death. *Id.* at 6–7. The AIB collected documents, interviewed witnesses, and generated a final report, dated February 9, 2017 ("AIB Final Report"). *See generally* (Doc. 220 at 7–8).

The Management Review and the AIB Final Report were critical of the VAMC's care of Mr. Anderson. *Id.* The Management Review concluded that the nurse who inserted the tube failed to meet the applicable standard of care. *Id.* at 7. Similarly, the AIB Final Report concluded that the same nurse should not have inserted the tube because she had no prior experience with that type of tube and Mr. Anderson was a high-risk patient. *Id.* at 8.

### C. Course of Proceedings and Disposition Below

#### 1. The Administrative Claims

On July 18, 2018, Plaintiff Kermit Webb Anderson (Mr. Anderson's surviving son) presented a $3 million claim to the VA for wrongful death; Plaintiff Donna Anderson (his daughter-in-law and administrator of his estate) also presented a $1 million claim for pre-death pain and suffering. (Doc. 93-1 at 1–4).

These are distinct causes of action under Georgia law. *See Mays v. Kroger Co.*, 701 S.E.2d 909, 911 (Ga. Ct. App. 2010) ("[A] survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action."). The available damages are also distinct for each claim. A wrongful death action permits the decedent's heirs to recover "the full value of the life of the decedent, as shown by the evidence." Ga. Code Ann. § 51-4-2(a). This includes "economic components, such as lost earnings, and non-economic components, such as loss of enjoyment of life." *Bibbs v. Toyota Motor Corp.*, 815 S.E.2d 850, 856 (Ga. 2018). This claim, however, does not include recovery for pre-death pain and suffering, which is recoverable only in a personal injury suit brought by a survivor or representative. *See id.* at 857–58 ("The damages recoverable in one case are not recoverable in

the other[.]"); Ga. Code Ann. § 9-2-41 (providing that personal injury actions survive the death of the injured party).

After unsuccessful negotiations, both claims were denied by the VA in July 2021. (Doc. 263 at 2). Plaintiffs then filed suit on August 9, 2021. (Doc. 1).

**2. Discovery**

Discovery initially proceeded without significant issue. However, around and immediately after the close of discovery, Plaintiffs raised several discovery disputes concerning the Government's failure to produce the Provider Statements, Management Review, and AIB Final Report. *See generally* (Doc. 220 at 39–42). The Government failed to produce these documents during discovery because the U.S. Attorney's Office (1) did not learn of the existence of the latter two until after the close of discovery and, (2) when it did learn of the documents' existence, mistakenly believed all three were subject to privilege or confidentiality protections. *Id.* at 46–54. The disputes culminated in a motion for sanctions. (Docs. 115, 263 at 2).

Contemporaneously, Plaintiffs also filed a motion to amend the *ad damnum* clause (the demand for money damages) of their complaint. (Doc. 116). Plaintiffs sought an increase to both administrative claims because of "newly discovered evidence"—arguing that "the previously concealed provider statements recently disclosed now reveal that

Decedent Jesse Anderson suffered a much more extended and prolonged period of pain and suffering without emergency measures being taken[.]" *Id.* at 1. Plaintiffs also asserted there were "intervening facts" justifying the increase in the form of unforeseen inflation and an increase in Georgia wrongful death verdicts and settlements, both of which were exacerbated by the Government's alleged delay in addressing the administrative claims and in the litigation. *Id.* at 3 n.2.

The district court set both motions for a full-day hearing. (Doc. 139).

**3. Sanctions**

At the hearing, the district court raised concerns with the Government's "failure to have fully investigated the case and then been able to have disclosed the range of evidence available and the proper information." (Doc. 155 at 124:8–11).[2] The court ultimately sanctioned the Government. (Doc. 220). It imposed nonmonetary sanctions in the form of adverse factual findings and monetary sanctions under Federal Rule of Civil Procedure 37(c)(1)(A) in an amount to be determined. *Id.* at 63–65. The parties later mediated the amount of the monetary sanctions and arrived at the agreed sum of $430,000, which the Government has paid. (Doc. 265).

[2] Page numbers to any transcripts cited are the page numbers designated by the court reporter. *See* 11th Cir. R. 28-5.

#### 4. Amendment of the *Ad Damnum* Clause

At the conclusion of the hearing, the district court granted Plaintiffs' motion to amend, thus permitting Plaintiffs to increase the *ad damnum* clause in their complaint. (Doc. 155 at 149:25–150:17). Shortly thereafter, Plaintiffs filed an amended complaint increasing their demand from $4 million to $25 million. (Doc. 147).

The Government moved to dismiss the amended complaint, arguing that there was no basis under 28 U.S.C. § 2675 to increase the *ad damnum* clause of the complaint six-fold. (Doc. 175). The matter was fully briefed. (Docs. 188, 191). However, the district court did not issue a ruling after briefing; instead, the court held a telephonic conference and asked for further briefing as to whether the "newly discovered evidence" justified an increase to *both* claims. (Doc. 202 at 2–3) ("Do Plaintiffs contend that the newly discovered evidence . . . affects the calculation of any other type of damages beyond pain and suffering?").

In their supplemental briefing, Plaintiffs admitted that "[t]he newly discovered evidence only supports the Estate's amended claim for additional damages for conscious pain and suffering[.]" (Doc. 208 at 1). Nevertheless, they asserted that the increase of the wrongful death claim was appropriate because of alleged "intervening facts" under 28 U.S.C. § 2675, namely: (1) a significant increase in wrongful death

settlements and verdicts in Georgia and (2) recent, unforeseen inflation, coupled with the Government's alleged delay. *Id.* at 1–2.

The court denied the Government's motion to dismiss. (Doc. 218). At the court's request for clarification, Plaintiffs allocated $19 million to the pain and suffering claim and $6 million to the wrongful death claim. (Doc. 211 at 35–36). Further, while the court acknowledged Plaintiffs' concession that the newly discovered evidence only supported the increase of the estate's claim for pain and suffering, it nevertheless permitted both claims to be amended. (Doc. 218 at 4). The court's order did not discuss the basis for amending the wrongful death claim. *Id.* at 7. It concluded, "Plaintiffs have shown that 28 U.S.C. § 2675(b) should apply in this case based on the newly discovered evidence . . . Plaintiffs have established proper grounds for seeking damages in excess of their administrative claims." *Id.* at 7.

**5. Trial**

Understanding the gravity of its mistakes following the sanctions hearing, the Government waived its privilege assertions, produced all but a handful of the previously withheld documents, and stipulated to liability. (Docs. 200, 220 at 32–33).[3]

[3] This appeal does not challenge the district court's imposition of sanctions (Doc. 220), the order permitting Plaintiff Donna Anderson to increase the amount of the claim for pain and suffering from $1

In August 2024, the court held a five-day bench trial on the issue of damages. (Doc. 263 at 3). In April 2025, it entered a final judgment awarding just over $8.7 million, comprising approximately $2.7 million for pain and suffering and $6 million for wrongful death (the full amount of that claim, as amended). (Docs. 263, 267).

As to the permitted increase of the administrative claim amounts, the court's findings of fact and conclusions of law mirrored the district court's prior order by finding that, "due to newly discovered evidence of Mr. Anderson's pain and suffering that was not available to Plaintiffs at the time of their administrative claim, Plaintiffs met the requirement of 28 U.S.C. § 2675(b) and could seek damages in excess of their administrative claim." (Doc. 263 at 43–44).

The government timely noticed this appeal. (Doc. 268).

---

million to $19 million (Docs. 211, 218), or the ultimate award of approximately $2.7 million on that claim (Docs. 263, 267).

**D. Standard of Review**

1. Questions of subject matter jurisdiction are reviewed *de novo*. *City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019); *cf. Davis*, 807 F.2d at 914 (finding district lacked the "jurisdictional authority" to award damages above the administrative claim amount, without an applicable exception under 28 U.S.C. § 2675(b)).

2. Questions of statutory interpretation are reviewed *de novo*. *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022); *see also Michels v. United States*, 31 F.3d 686, 689 (8th Cir. 1994) ("The meaning of the terms 'newly discovered evidence not reasonably discoverable' and 'intervening facts' in § 2675(b) is a question of statutory interpretation subject to *de novo* review.").

## SUMMARY OF THE ARGUMENT

When the district court permitted Plaintiff K. Webb Anderson to double the available damages on his wrongful death claim, it did so without providing any factual or legal basis under § 2675(b). The court then compounded its error by awarding the full $6 million on that claim after trial. Because neither exception under § 2675(b) permitted the increase, the court erred as a matter of law in awarding more than $3 million on the wrongful death claim.

First, there is no dispute that the "newly discovered evidence" exception does not apply to the wrongful death claim. Plaintiffs conceded this. (Doc. 208 at 1). The court acknowledged that concession. (Doc. 218 at 4). And it agreed that the newly discovered evidence only goes to the decedent's pain and suffering. (Docs. 218 at 7, 263 at 43–44).

Second, the district court did not find—nor could it have found—that Plaintiffs' asserted "intervening facts" justified an increase to the wrongful death claim. Consistent with how this Court and other Circuits have applied that exception, an intervening fact is one discovered after the submission of the administrative claim that changes the magnitude of the injury that a plaintiff has suffered. For example, an intervening fact may show that an injury thought to be temporary is later found to be permanent. Unforeseen inflation and

increased wrongful death verdicts and settlements in Georgia are not intervening facts because they do not affect, much less change, the magnitude of an injury; they merely address the valuation of that injury.

With near uniformity, courts have rejected attempts to cast external economic factors, including inflation, as "intervening facts." Moreover, doing so would be particularly anomalous because the FTCA expressly prohibits awards against the Government of prejudgment interest. These are, in part, intended to compensate plaintiffs for inflation. It is difficult to imagine that Congress denied plaintiffs a mechanism of accounting for inflation in one section of the FTCA but provided a pliable exception to circumvent that denial in the following section.

Against the weight of these cases, Plaintiffs rely on one case where a court treated unexpected inflation combined with dilatory litigation conduct by the Government as an intervening fact. The court in that case emphasized the "unique circumstances" undergirding its decision, including a ten-year delay by the Government, the precipitous decline of the U.S. dollar (as proved by expert evidence), and the equities of the case. Those circumstances are not present here.

Similarly, no court has recognized an increase in comparable wrongful death verdicts and settlements in other cases to be an

intervening fact, and the Court should decline to do so here. An increase in comparable verdicts and settlements does not bear on how a court calculates the components of the "full value" of a decedent's life. For example, such an increase does not affect a decedent's lost earnings, funeral, or medical expenses. Rather, this argument appears to be no more than a tacit admission that Plaintiffs, or their attorneys, think they undervalued the wrongful death claim. But this Court has long recognized that a change in how a party values its claim is not a proper basis to invoke the exceptions under § 2675(b).

Further, expanding the meaning of "intervening facts" in this way would run afoul of the bedrock principle that waivers of sovereign immunity must be strictly construed in favor of the sovereign. This expansion risks negatively affecting all tort litigation against the Government. The Government would be forced to constantly reassess its maximum potential liability as it monitors comparable state court cases and the unpredictable nature of settlements and jury verdicts.

Thus, because neither exception under § 2675(b) applied, the district court erred when it permitted the increase to the wrongful death claim and then awarded the full $6 million after trial. The court's judgment should be vacated in part and remanded with instructions to reduce Plaintiff K. Webb Anderson's wrongful death award to $3 million.

# ARGUMENT AND CITATIONS OF AUTHORITY

## Where neither exception under section 2675(b) applied, the district court erred in awarding more than $3 million for wrongful death.

### A. Absent an applicable exception, a court lacks the jurisdiction to award more than the administrative claim amount.

Section 2675(b) begins with this limitation: an "[a]ction under this section shall not be instituted for any sum in excess of the amount of the claim presented to the federal agency[.]" 28 U.S.C. § 2675(b). The limitation means a plaintiff cannot recover tort damages against the federal government for an amount greater than the sum certain demanded in her administrative claim. *Davis v. Marsh*, 807 F.2d 908, 912 (11th Cir. 1987) ("It is also certain that appellees cannot recover any sum in excess of the amount of his administrative claim . . .") (internal quotation marks omitted); *see also Martinez v. United States*, 780 F.2d 525, 530 (5th Cir. 1986) ("[A] plaintiff may not recover any sum in excess of the amount of the claim presented to the appropriate federal agency in conformance with 28 U.S.C. § 2675(a).").

The limitation gives way only under two exceptions: upon a showing of "newly discovered evidence" or "intervening facts." 28 U.S.C. § 2675(b). The burden to prove either exception falls to the plaintiff. *Zurba v. United States*, 318 F.3d 736, 739 (7th Cir. 2003). But when a plaintiff fails to prove that either exception applies—and the district court nevertheless enters judgment above the administrative

claim amount—this Court has held that the district court lacks the "jurisdictional authority" to enter that judgment. *Davis*, 807 F.2d at 914; *cf. Martinez*, 780 F.2d at 531 (reducing final judgment to amount of administrative claim and affirming as modified). In these circumstances, the proper remedy, on *de novo* review, is to vacate the judgment in part and remand the case with instructions to reduce the award to the amount of the administrative claim. *See Davis*, 807 F.2d at 914.[4]

---

[4] Questions of subject matter jurisdiction are reviewed *de novo*. *See City of Miami Gardens v. Wells Fargo & Co.*, 931 F.3d 1274, 1282 (11th Cir. 2019). Moreover, a district court's interpretation of a statute is reviewed *de novo*. *Dotson v. United States*, 30 F.4th 1259, 1264 (11th Cir. 2022); *see also Michels v. United States*, 31 F.3d 686, 689 (8th Cir. 1994) ("The meaning of the terms 'newly discovered evidence not reasonably discoverable' and 'intervening facts' in § 2675(b) is a question of statutory interpretation subject to *de novo* review.").

Courts apply a clear-error standard to *factual* findings that an exception under § 2675(b) applies to increase a tort claim. *See, e.g.*, *Malmberg v. United States*, 816 F.3d 185, 196 (2d Cir. 2016); *Michels*, 31 F.3d at 689; *Kielwien v. United States*, 540 F.2d 676, 680 (4th Cir. 1976). But the district court's decision here was wrong for legal, not factual reasons.

### B. It was error for the court to permit an increase to the wrongful death claim because of "newly discovered evidence" where the parties agreed that exception did not apply.

The district court concluded that "newly discovered evidence" justified an increase to both Plaintiff Donna Anderson's claim for pre-death pain and suffering and Plaintiff K. Webb Anderson's claim for the wrongful death of his father. (Docs. 218 at 7, 263 at 43–44). It then awarded the full $6 million sought on the wrongful death claim. (Doc. 267). The district court's conclusion that the newly discovered evidence exception applied to the wrongful death claim was erroneous.

Indeed, the parties agreed that the newly discovered evidence exception did not apply to the wrongful death claim. In supplemental briefing, Plaintiffs conceded that "[t]he newly discovered evidence only supports the Estate's amended claim for additional damages for conscious pain and suffering[.]" (Doc. 208 at 1). The district court acknowledged this concession in its order denying the Government's motion to dismiss. (Doc. 218 at 4). And it recognized that the "newly discovered evidence . . . relate[d] to the duration of Mr. Anderson's conscious pain and suffering." *Id.* at 7; *see also* (Doc. 263 at 43–44).

The district court's error in applying this exception to the wrongful death claim is difficult to understand, given that the court had specifically requested clarification as to whether the newly discovered

evidence went to both claims. (Doc. 202 at 2–3). In light of Plaintiffs' response that it did not, its insistence on invoking that exception as to the wrongful death claim was error.

Even if the district court gave no weight Plaintiffs' concession, it could not properly have linked the newly discovered evidence on pain and suffering to the damages for wrongful death. Under Georgia law, the two claims—and the damages recoverable on those two claims—are distinct. *See Mays v. Kroger Co.*, 701 S.E.2d 909, 911 (Ga. Ct. App. 2010) ("[A] survivor's statutory claim for a decedent's wrongful death and an estate's common-law claim for the same decedent's pain and suffering are distinct causes of action."); *Bibbs v. Toyota Motor Corp.*, 815 S.E.2d 850, 857–58 (Ga. 2018). ("The damages recoverable in one case are not recoverable in the other[.]"). Thus, evidence supporting an increase in the length of pain and suffering experienced by Mr. Anderson necessarily does not prove any damages recoverable in an action for wrongful death. *See Bibbs*, 815 S.E.2d. at 856 (detailing components of the "full value" of the decedent's life).

Accordingly, the court erred in invoking the newly discovered evidence exception as to the wrongful death claim.

### C. Nor could the court have permitted an increase to the wrongful death claim based on inflation or an increase in comparable verdicts and settlements because these are not "intervening facts."

The district court did not specifically consider whether inflation or an increase in Georgia's wrongful death verdicts and settlements were "intervening facts" permitting an increase to the wrongful death claim. Even if it had, however, it could not have concluded that these were intervening facts; as a matter of law, they are not. The Court therefore need not remand for the district court to reconsider Plaintiffs' motion with additional analysis. It should simply vacate the court's award on the wrongful death claim and remand with instructions to limit the wrongful death award to $3 million.

#### 1. An intervening fact is one that unexpectedly changes the magnitude of the injury that the plaintiff has suffered.

The Court's predecessor, the Former Fifth Circuit, considered the "intervening facts" exception at least twice. First, in *United States v. Alexander*, 238 F.2d 314, 318 (5th Cir. 1956), the Court upheld a finding of intervening facts where a plaintiff discovered, after presenting his administrative claim, that his shoulder injury would not heal. The Court emphasized the fact that the plaintiff did not know—and could not have known—the extent of his injury when he presented his administrative claim. *See id.* ("This could not have been ascertained at the time the claim was presented. It was not then

known to the appellee nor to the doctor who examined and treated him."). Second, in *Molinar v. United States*, 515 F.2d 246, 249 (5th Cir. 1975), the Court upheld a finding of intervening facts where the plaintiff later discovered his knee injury would require three operations and ensuing treatment. The amounts owed for these treatments (performed shortly before and continuing after the submission of the administrative claim) were not included in the original claim amount. *Id.*

The common thread in these decisions is that the Court upheld application of the exception when a plaintiff proved facts that demonstrated an unexpected change in the magnitude of a plaintiff's injuries. The facts were "intervening" because they were discovered after submitting the administrative claim but before judgment.

This interpretation is consistent with how other Circuits have defined and applied the exception. *See, e.g.*, *O'Rourke v. E. Air Lines, Inc.*, 730 F.2d 842, 856 (2d Cir. 1984) ("an unexpected change [] either in the law or in a **medical diagnosis**.") (emphasis added), *abrogated on other grounds by Salve Regina Coll. v. Russell*, 499 U.S. 225 (1991); *Husovsky v. United States*, 590 F.2d 944, 955 (D.C. Cir. 1978) (applying exception to unexpected increase in plaintiff's life expectancy); *Spivey v. United States*, 912 F.2d 80, 85–86 (4th Cir. 1990) (applying exception to a tardive dyskinesia diagnosis, developed only

after the administrative claim was filed);[5] *Michels*, 31 F.3d at 689 (applying exception to plaintiff's worsening injuries and need for multiple surgeries—discovered only after filing a claim); *Zurba*, 318 F.3d at 744 (applying exception to a dramatic increase in emotional distress, developed after the filing of the complaint, and new diagnoses of anxiety and adjustment disorder).

This interpretation is also consistent with the Court's application of the related "newly discovered evidence" exception. In defining that exception, the Court "has held that a reasonably based change in expectation as to the severity and permanence of an injury is newly discovered evidence within the meaning of section 2675(b)." *Cole v. United States*, 861 F.2d 1261, 1262 (11th Cir. 1988); *see also Fraysier v. United States*, 766 F.2d 478, 481 (11th Cir. 1985) (finding newly discovered evidence exception applied where the permanence and extent of plaintiff's injuries could not have been known at the time of submitting the administrative claim).

---

[5] In *Spivey*, the lower court found a change as to the extent of the plaintiffs' injuries and future medical care fell under either exception. *Id.* at 83–84. The Fourth Circuit affirmed in part finding the new tardive dyskinesia diagnosis was newly discovered evidence; it remanded to consider whether plaintiff's long-term prognosis was also newly discovered evidence. *Id.* at 86.

Thus, the "intervening facts" exception applies to facts, discovered after submitting a claim, that show an unexpected change in the magnitude of plaintiff's injuries. And, read together, both § 2675(b) exceptions are best understood as addressing slightly different scenarios. The "newly discovered evidence" exception applies to evidence shedding new light on the extent of a plaintiff's *initial* injury. *See, e.g.*, *Fraysier*, 766 F.2d at 481. And the "intervening facts" exception applies to facts learned, after submitting an administrative claim, that demonstrate a subsequent complication of the initial injury, new injuries, or the need for additional treatment. *See, e.g.*, *Molinar*, 515 F.2d at 249; *Michels*, 31 F.3d at 689; *Zurba*, 318 F.3d at 744. In either case, however, courts have largely confined application of the § 2675(b) exceptions to evidence or facts that affect the nature of a plaintiff's injury, not merely the valuation of that injury.

**2. Inflation is not an "intervening fact" because it demonstrates nothing about the magnitude of an injury.**

Inflation is an external economic factor, defined as the overall general upward price movement of goods and services in an economy. *See https://www.bls.gov/bls/inflation.htm* (last visited on September 19, 2025). Inflation does not shed light on the extent of a plaintiff's injuries, much less demonstrate an unexpected change in the

magnitude of those injuries. It only is a reference point for how that injury should be valued in today's dollars.

Expanding the meaning of "intervening facts" to include inflation is problematic for several reasons. First, it would allow plaintiffs to circumvent the FTCA's express prohibition against an award of prejudgment interest. *See* 28 U.S.C. § 2674. Part of the purpose of a prejudgment interest award is to compensate plaintiffs for "the time value of the lost money as well as for the effects of inflation." *Schumacher v. AK Steel Corp. Ret. Accumulation Pension Plan*, 711 F.3d 675, 686 (6th Cir. 2013) (internal quotation marks omitted). So, counting inflation as an "intervening fact" would effectively permit § 2675(b) to circumvent the prohibition of § 2674. *Cf. Mass. Dep't of Revenue v. Shek* (*In re Shek*), 947 F.3d 770, 777 (11th Cir. 2020) ("We must interpret statutes harmoniously, reconciling separate sections so that they are compatible and not contradictory."). It is difficult to imagine that Congress denied plaintiffs a mechanism of accounting for inflation in one section of the FTCA, while providing a pliable exception to circumvent that denial in the following section.

Plaintiff's interpretation of § 2675(b) also runs contrary to the near-uniform rejection of similar attempts to cast external economic factors, including inflation, as intervening facts. *See O'Rourke,* 730 F.2d at 856 (declining amendment based on an increase in salaries

where increase was neither unforeseeable nor was there a showing that plaintiff relied on old salary structure in calculating administrative claim); *Martinez*, 780 F.2d at 528 (declining to find that an *en banc* decision clarifying the effect of inflation on damage awards was an intervening fact); *Tookes v. United States*, 811 F. Supp. 2d 322, 335 (D.D.C. 2011) ("Inflation has been a permanent fixture in our economy for many decades, and thus the Court finds that <u>normal</u> inflation rates, by definition, cannot constitute an intervening fact or newly discovered evidence.") (internal citation and quotation marks omitted, emphasis in original); *Sullivan v. United States*, No. B/1222, 1985 U.S. Dist. LEXIS 21201, at *10 (S.D. Ga. Mar. 29, 1985) ("[A]d damnum clause increases based solely on general changes in the economy would expand § 2675(b) beyond the narrow scope Congress prescribed."). These well-reasoned decisions should be persuasive here.

Against the weight of these cases, Plaintiffs relied heavily on what appears to be a singular exception: *McMichael v. United States*, 856 F.2d 1026 (8th Cir. 1988)—a case that is neither binding nor factually similar. In *McMichael*, the lower court doubled the awards to three plaintiffs because of unprecedented inflation, coupled with what the court perceived as the Government's substantial delay in litigating the case. *Id.* at 1035. On appeal, the Eighth Circuit upheld the increased award. *Id.* at 1036.

But *McMichael* did not allow the plaintiffs to exceed their administrative claims solely because of inflation. Cabining its holding to the "unique circumstances" before it, the court focused on the ten-year delay and the Government's employing what the court regarded as "procedural barriers" to slow the case. *Id.* Because of this delay, the court found that denying the plaintiffs' motions to amend their *ad damnum* clauses would work a "substantial injustice, contrary to the purposes of the FTCA." *Id.*

No such delay is present here. Despite the Government's mistaken withholding of documents, the case was still tried almost exactly three years from the date of filing. And though Plaintiffs were critical of the Government's delay in disposing of the administrative claims (2018–2021), the delay was occasioned in part by settlement negotiations. Plaintiffs also knew they could have filed in federal court just six months after presenting the administrative claims. (Doc. 155 at 90:6-7) ("[W]e knew after six months we could have filed in federal court."); *see also* 28 U.S.C. § 2675(a) (permitting a claimant to file a lawsuit if an agency does not act within six months). Lastly, Plaintiffs overlook their nearly two-year delay from the death in filing the administrative claims (November 2016–July 2018). Thus, whatever delay Plaintiffs assert, the circumstances here are very different than those in *McMichael*.

In any event, *McMichael* does not support the application of the "intervening facts" exception on the evidentiary record in this case. The plaintiffs in *McMichael* presented "substantial evidence," including the affidavit testimony of two expert witnesses, demonstrating that "inflation occurring between 1976 and 1986 caused the value of the dollar to decline about 50%." *McMichael*, 856 F.2d at 1036. Here, Plaintiffs presented no evidence of unprecedented inflation or a precipitous decline in the value of the U.S. Dollar—whether in the form of an economic expert or otherwise. Had they done so, the Government at a minimum could have cross-examined those experts and likely identified its own.

Plaintiffs have also not shown that the economic circumstances of today rival those addressed in *McMichael*. Indeed, the *McMichael* court grappled with an unprecedented inflation spike, coupled with an unforeseen decline in the value of the U.S. dollar, in the late 1970s and early 1980s. *Id.* at 1035–36. While it may be true that inflation fluctuated during the COVID-19 pandemic (which coincided with some of the litigation of this case), there is still no justification for *doubling* the wrongful death claim. Even putting aside Plaintiffs' lack of evidence, $3 million in July 2018 is worth at most $3.9 million in April 2025. *See https://www.bls.gov/data/inflation_calculator.htm* (last visited September 19, 2025).

### 3. Similarly, an increase in comparable settlements and verdicts does not affect, much less change, any component of a wrongful death injury.

It would also have been error for the district court to accept Plaintiffs' argument that a general increase in Georgia wrongful death verdicts and settlements is an intervening fact under § 2675(b). (Docs. 116, 208). Plaintiffs' argument here truly finds no peer. They did not point to any decision adopting this argument, and the Government has found none. *See id.*

At the outset—as with inflation—an upward trend in comparable settlements and verdicts says nothing about the extent of a decedent's wrongful death injury, much less demonstrate an unexpected change in the magnitude of that injury. *Cf. Molinar*, 515 F.2d at 249; *Michels*, 31 F.3d at 689; *Zurba*, 318 F.3d at 744.

In a wrongful death suit, the "injury" is the death, and the measure of damages attributable to that injury is the "full value of the life." Ga. Code Ann. § 51-4-2(a). This is comprised of economic and non-economic components. *Bibbs*, 815 S.E.2d at 856; *see also Curtis v. United States*, 274 F. Supp. 3d 1366, 1379–82 (N.D. Ga. 2017) (citing cases). The economic component generally consists of the decedent's expected earnings over the decedent's normal life expectancy, as well as "funeral, medical, and other necessary expenses resulting from the injury or death[.]" *Curtis*, 274 F. Supp. 3d at 1379; Ga. Code Ann.

§ 51-4-5(b). The non-economic component consists of those things "incapable of exact proof or even exact definition." *Curtis*, 274 F. Supp. 3d at 1379 (internal quotation marks omitted). These can include "the decedent's character, familial relationships, interests and abilities[.]" *Id.* at 1381.

An increase in Georgia wrongful death verdicts or settlements, even if true, does not affect any component of the "full value of the life" calculation. An increase in after-the-fact verdicts or settlements does not affect Mr. Anderson's expected lifetime earnings or his funeral or medical expenses. It does not affect the emotional turmoil felt by his family and friends because of his passing. It neither bolsters nor diminishes his character, familial relationships, enjoyment of his interests, or the exercise of his abilities during his lifetime. It simply has no bearing on any component of the injury. Nor have Plaintiffs cited any statute or case that requires a court to review the comparable verdicts and settlements when considering these components.

Rather, Plaintiffs' argument appears to be no more than a tacit admission that they think they undervalued the wrongful death claim. But the Court has long recognized (albeit in the context of defining "newly discovered evidence") that "[t]he purpose of Section 2675(b) undoubtedly is to limit claims on which there is only a change in valuation between the agency claim and the lawsuit." *Fraysier*, 766

F.2d at 480; *see also Kielwien*, 540 F.2d at 681 (noting § 2675(b) "would be meaningless if claimants, after rejection of their claim, could institute actions for amounts in excess of the claim filed merely because they, or their attorneys, are of the opinion that the claim has a greater value") (internal quotation marks omitted).

Additionally, expanding the meaning of "intervening facts" to include comparable verdicts and settlements would have cascading negative effects in the Government's other tort cases (at a minimum, wrongful death cases pending in Georgia since 2021). And it would defeat the purpose of the sum certain requirement: to inform the Government of its maximum liability and encourage settlement. *See* 28 U.S.C. § 2675(b); *Turner*, 514 F.3d at 1200; *Lebron*, 279 F.3d at 330–31. Instead of having some certainty as to its exposure in tort cases, the Government would be forced to constantly reassess its maximum potential liability as it monitors comparable state court cases and the often highly unpredictable nature of jury verdicts.[6]

Lastly, expanding the meaning of "intervening facts" runs afoul of the bedrock principle that waivers of sovereign immunity are to be strictly construed in favor of the sovereign. *See Means v. United States*,

---

[6] Further, comparing state court verdicts and settlements to federal tort cases is an ill-suited comparison, as state court verdicts often include components of prejudgment interest and punitive damages. Both are expressly prohibited under 28 U.S.C. § 2674.

176 F.3d 1376, 1378 (11th Cir. 1999). The Court must take care to "scrupulously observe[]" a sovereign immunity waiver and not expand it beyond what Congress intended. *Dotson*, 30 F.4th at 1264.

Accordingly, inflation and an increase in comparable verdicts and settlements, even if proved, are not "intervening facts" as this Court and most Circuits have interpreted that exception. They do not affect the nature—much less unexpectedly change the magnitude—of the wrongful death; they merely address the valuation of that injury. Expanding the meaning of the exception as Plaintiff proposes also threatens to create contradiction between to adjacent sections of the FTCA. And it would significantly weaken the sum certain requirement by requiring the Government to constantly reassess its maximum potential liability in virtually every tort case.

## CONCLUSION

The district court's judgment should be vacated in part and the case remanded with instructions to reduce the award on Plaintiff's wrongful death claim to $3 million.

Respectfully submitted,

THEODORE S. HERTZBERG
*United States Attorney*

*/s/ Andres H. Sandoval*
ANDRES H. SANDOVAL
*Assistant United States Attorney*

## CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME LIMIT, TYPEFACE REQUIREMENTS, AND TYPE-STYLE REQUIREMENTS

This document complies with the type-volume limit of Fed. R. App. P. 32(a)(7)(B)(i) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 6,621 words.

This document complies with the typeface requirements of Fed. R. App. P. 32(a)(5)(A) and the type-style requirements of Fed. R. App. P. 32(a)(6) because this document has been prepared by a proportionally spaced typeface using Microsoft Word in 14-point Goudy Old Style.

September 19, 2025.

*/s/ Andres H. Sandoval*

ANDRES H. SANDOVAL

*Assistant United States Attorney*

## CERTIFICATE OF SERVICE

This day, the Appellant's Opening Brief was filed and served using the Court's CM/ECF system, which automatically sends notification to parties and counsel of record.

September 19, 2025.

*/s/ Andres H. Sandoval*

ANDRES H. SANDOVAL
*Assistant United States Attorney*